Stacy Scheff
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611, Tucson, AZ 85717-0611
(520) 471-8333 • FAX (520) 300-8033
stacy.scheff@gmail.com
State Bar No. 028364
ATTORNEY FOR PLAINTIFF

# DISTRICT COURT FOR THE UNITED STATES

# DISTRICT OF ARIZONA

| | |
|---|---|
| Miguel Angel Garfias-Ortega, | |
| Plaintiff, | Case No. CV17-01091-PHX-JJT |
| v. | (BSB) |
| Charles L. Ryan, et. al., | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Plaintiff, through undersigned counsel, pursuant to Fed. R. Civ. P. 56, and LRCiv 56.1(a), submits his Opposition to Defendant's Motion for Summary Judgment. The Defendant, Keith Smith is not entitled to summary judgment as there are triable issues of fact regarding when the Statute of Limitations began, and whether Defendant Smith acted reasonably in denying Plaintiff protective custody until after the sixth request, when Plaintiff had been beaten nearly to death.

1

## I. FACTS

June 10, 2008 Miguel Garfias-Ortega was incarcerated under the custody of the Arizona Department of Corrections (ADC) and housed at the ASPC-Lewis-Stiner Unit (Stiner). PSOF 9. On December 10, 2008 while at Stiner, Garfias-Ortega requested PC for the first time. PSOF 10. He stated he would be harmed if he were to be housed with Mexican Americans. PSOF 10. He requested to be housed with Mexican Nationals. PSOF 10. PC was denied February of 2009 and one inmate was added to his Do not House With (DNHW) list. PSOF 10.

Defendant Smith was Security Operations Administrator for the Arizona Department of Correction's (ADC) Office of Security Operations from November of 2011 through April of 2016. PSOF, 11. His responsibilities included: reviewing inmates' appeals of the decisions of the PC Committee to deny requests for PC status. PSOF, 12.

During the relevant time period of Plaintiff's allegations against Defendant Smith, he requested Protective Custody (PC) six times: 1) October 30, 2012 at ASPC-Tucson-Cimarron Unit; 2) January 16, 2013 at ASPC-Lewis-Morey Unit; 3) April 3, 2013 at ASPC-Yuma-Dakota Unit; 4) July 2013 at ASPC-Eyman-Special Management Unit ("SMU"); 5) September 24, 2014 at ASPC-Florence-Central Unit; 6) and December 6, 2014 at ASPC-Tucson-Winchester Unit. PSOF 13.

On or about October 30, 2012, while at ASPC-Tucson-Cimarron, Garfias-Ortega requested PC. PSOF 14. He claimed that on October 26, 2012 he had been involved in a fight with an inmate that turned out to be a "somebody." PSOF 15. On October 30, 2012, three inmates assaulted him. PSOF 16. He later learned, the inmate he fought with on October 26, 2012, was a high-ranking member of the Security Threat Group (STG) the Border Brothers and was told that wherever he goes he'll be stabbed or killed and that the assault was merely a warning. *Id*. Garfias-Ortega claimed he was "not able to touch another GP yard again." *Id*. Medical evaluated Garfias-Ortega for minor injuries, including scratches on his face and back and bruises consistent with a fight or minor assault. PSOF 17. The Special Security Unit (SSU) believed this issue was not gang related due to not finding Garfias-Ortega's name on any STG hit list. PSOF 18.

On Saturday, October 27, 2012 Garfias-Ortega was moved from Cimarron to ASPC-Tucson-Rincon Unit; however on the following day he was returned to Cimarron because he was not permitted to be at Rincon due to his alleged recent "sit-in" on the Rincon recreation yard. PSOF 19. Due to the quick back-and-forth movement, the Cimarron inmates now believe he "rolled up" or requested PC, putting him in further danger. PSOF 20. Smith denied the request because he believed it to be a localized issue and that Garfias-Ortega could be placed in alternative GP housing. PSOF 21-22.

On or about January 16, 2013, Garfias-Ortega requested PC at ASPC-Lewis-Morey Unit. PSOF 23. Garfias-Ortega stated that his friend was told by members of the Border Brothers that the Border Brothers placed a hit out on Garfias-Ortega. PSOF 24. On or around January 16, 2013, Garfias-Ortega was approved for alternative GP placement and waived his right to appeal his request for PC status. PSOF 25.

On or around April 3, 2013, while at ASPC-Yuma-Dakota unit Garfias-Ortega requested PC a fourth time. PSOF 26. Garfias-Ortega claimed that he was approached by an inmate who asked for his paperwork. Garfias-Ortega was unable to provide his paperwork and was then assaulted and his television stolen and given to other inmates. PSOF 27. Plaintiff said, again, "everything started in 2008 when I assaulted a Border Brother and it's been following me." PSOF 27. SSU CO II Andres Jimenez, who conducted the interview with Garfias-Ortega recommended Garfias-Ortega to be transferred to another prison complex. PSOF 28.

Defendant Smith reviewed the PC committee's decision for Garfias-Ortega's 4th PC request. PSOF 29. He found, "alternative placement is the best option at this time." PSOF 29. Smith wrote a Protective Segregation Appeal Memorandum that stated, "…Your allegations are self-reported and unsubstantiated. Appropriate Do Not House With Inmates have been added to your list." PSOF 30.

While in ASPC-Cheyenne-CDU Unit, Garfias-Ortega appealed the PC decision made by Defendant Smith. PSOF 31. Garfias-Ortega wrote, "It is a violation of the eight amendment to subject my life [that is] in jeopardy…I physically attacked one of the Border Brothers sergeants. They have a hit on me." His appeal was denied, and he was sent to another facility. PSOF 31.

On or about September 24, 2014, Garfias-Ortega requested PC for the fifth time while housed at ASPC-Florence-Central. PSOF 32. According to an ADC report, Garfias-Ortega requested PC because he had previously refused to join the Border Brothers and was assaulted for that reason. PSOF 33. According to his PC file, the Unit Administrator Protective Custody review form stated that Garfias-Ortega was willing to house in another unit. PSOF 34. Garfias-Ortega wrote,

> After discussing the facts of my pc request to CO IV Espinoza I concluded that I am willing to go back to GP to attempt to resolve these issues.

PSOF 35.

According to DO 805, Garfia-Ortega's PC request ended. PSOF 36.

On December 4, 2014 Garfias-Ortega was transferred to ASPC Tucson Winchester Unit. PSOF 37. On December 5, 2014, Garfias-Ortega was approached by three inmates and was questioned about his altercation while at Cimarron unit in October 2012. PSOF 38. These inmates stated they'd use another inmate's cell phone to verify what happened. PSOF 38. Shortly after, Garfias-

5

Ortega was told he needs to step in HU6B to receive a "hot one" (a minor assault) because it was confirmed that the previous altercation at Cimarron in 2012 involved a Border Brother. PSOF 39. Approximately 8 inmates began to assault him. Garfias-Ortega lost consciousness and was not able to remember what happened from that point on. PSOF 40.

Garfias-Ortega was transported to University Medical Center (UMC) by ADC staff for treatment. PSOF 41. While Garfias-Ortega was transported to the hospital, SSU conducted interviews with influential and non-influential inmates at Winchester-Unit. PSOF 42. During these interviews SSU was advised by confidential sources that Garfias-Ortega was assaulted due to fighting a high-ranking member of the STG the Border Brothers. PSOF 42. The Doctors at UMC found, "Extensive right-sided scalp contusions with a laceration of the left frontal region and displaced nasal bone fractures." PSOF 43.

On December 6, 2014 Garfias-Ortega was returned to Winchester unit. But, due to his injuries, was placed in Rincon pending his PC review. PSOF 44. Garfias-Ortega requested PC for the sixth time. PSOF 45.

On December 10, 2014, Plaintiff submitted an Informal Letter, Form 916-1, complaining about failure to protect. PSOF 46. On December 15, 2014, CO III McChesney responded to the 12/10/14 grievance by saying that it was concerning protective custody, and therefore not grievable. PSOF 47. On December 16,

2014, Deputy Warden Vega found the existence of a threat from the Border Brothers. Multiple suspects of the assault that took place on December 5, 2014 were determined to be Border Brothers. PSOF 48. Deputy Warden Vega stated,

> This is the second time I/M Garfias has been observed with injuries consistent with a physical altercation over fighting a Border Brother. I/M Garfias-Ortega is likely to continue to tell inmates his past history to come "clean" regardless if he suffers minor or major injuries. The current issue resulted in blood being all over the run door and along a wall leading towards the run door and involved multiple inmates identified and unidentified.

PSOF 49.

On January 14, 2015, CO III Basurto responded to an Inmate Letter from plaintiff, and stated that "there is no documentation on 12/5 or 12/6 of you having sustained a broken nose or fractured ribs… your head was not split open." PSOF 50. On February 12, 2015, an email from Tara Hoyt states that the injuries that Plaintiff suffered were "very serious", and that "SSU Wendus cannot say if there is a statewide threat against Garfias-Ortega at this time." PSOF 51. The email states that there was a "CI" or confidential informant within the Winchester Border Brother inmates. PSOF 52. The protective custody security tracking form B shows final PS approval dated 3/9/2015. PSOF 53.

Several pages are entirely redacted from the 3/6/15 protective custody file. PSOF 54. There is no documentation of when Mr. Garfias-Ortega received notice of the PC placement. PSOF 55.

**II. Law and Argument**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact issue is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). This can be done by either producing evidence negating an essential element of the plaintiff's claim, or by showing that plaintiff does not have enough evidence of an essential element to carry its ultimate burden at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,

210 F.3d 1099, 1103 (9th Cir. 2000). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323-24. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id*. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*., 809 F.2d 626, 630 (9th Cir. 1987).

**A. Statute of Limitations.**

Defendant Smith claims that Plaintiff could have used the grievance process regarding a failure to protect as of December 6, 2014, because that is when he returned from the hospital, but failed to do so. Doc. 164, p.8. Defendant Smith bases these assertions on the affidavits of grievance log keepers, and the grievance logs themselves. *Id.* However, Defendant Smith also says that the grievance procedure does not serve as a duplicate appeal for denial of PC. Doc. 165, p.2. Plaintiff submitted evidence that he tried to grieve the issue of failure to protect,

9

however, those grievances are not reflected anywhere in records presented by Defendant Smith. PSOF 46.

Furthermore, the final request for PC is dated 3/6/2015, and does not contain any documentation of when Plaintiff received notice that he was approved for PC. Plaintiff could not have known if his request was going to be granted until he received notice of it, and was moved to a protected location.

Therefore there is a genuine issue of material fact as to 1) whether the records kept by the Defendant are complete and accurate as to Plaintiff's grievance attempts; 2) whether Plaintiff exhausted administrative remedies by either the grievance procedure or the protective custody procedure; and 3) when Plaintiff received notice that he was granted PC, thereby triggering the statute of limitations.

## B. Failure to Protect.

In evaluating the Eight Amendment's cruel and unusual punishment, regarding prison officials and deliberate indifference, when prison officials fail to protect inmates from attacking other inmates,

> the courts asks that two requirements be met: (1) the objective component, requiring a prisoner to show that that "conditions pos[e] a substantial risk of serious harm;" and (2) the subjective component, requiring a prisoner to show that the defendant was aware of the risk and disregarded it.

10

*Finkle v. Ryan*, 174 F. Supp. 3d 1174 (2016), Id. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).

Defendant Smith claims that Plaintiff had inconsistent stories about why he needed protection. Doc. 164, p.10. Smith claims that Plaintiff could not be believed because of this, and because there were no outward signs of assault after the 2012 assault. Doc. 164, p.11.

However, the actual PC file that Defendant Smith purportedly reviewed shows a very different picture:

> <u>Summary of Current Request:</u> 12/05/14… Garfias-Ortega 230786 claims he was assaulted by… on the order of… because he had assaulted an influential STG Border Brothers in 2012. Garfias-Ortega… suffered possible head trauma. Garfias-Ortega claims that… is the inmate that checked his history upon arrival. [REDACTED] was in possession of Garfias-Ortega's television… SSU COII Wendus learned through interviews with "a known influential Inmate" (CIRAQ provided) that Garfias-Ortega was assaulted due to fighting an influential member of the STG Border Brothers.
> <u>Date and summary of prior requests:</u>
> 09/24/14 @ A01 – Garfias-Ortega has provided no new information… Informally Resolved
> 04/03/13 @Y03 – Garfias-Ortega claims he was assaulted by 3 inmates. Garfias-Ortega claims he is assaulted by STG Border Brothers at every yard he goes to.
> 01/17/13 @L23 – Garfias-Ortega claims he was told to leave the yard due to his prior requests for protection.
> 10/30/12 @ C11 – Garfias-Ortega claims he was assaulted by multiple members of the STG Border Brothers because he had previously been involved in a fight with a Border Brother. Garfias-Ortega had some scratches on his face…

> 12/16/08 @L02 – Garfias-Ortega claims he was threatened by the inmate running the pod. Garfias-Ortega claims this was a misunderstanding.

Doc. 167-6, p.3.

All of Plaintiff's reasons for wanting protection from the Border Brothers are consistent, and do not negate each other: they can all be true. All of the other staff that reviewed Plaintiff's requests could see that, but somehow Defendant Smith, who had the ultimate say, could not. This is simply not the type of defense that would call for summary judgment. A jury should be allowed to decide whether Defendant Smith acted reasonably, or if he was deliberately indifferent to Plaintiff's repeated requests for protection.

This shows a genuine issue of material fact as to whether Defendant Smith acted reasonably in his responses to Plaintiff's many requests for protective custody.

Dated this 21st of February, 2020

*S. Scheff*

Stacy Scheff

Delivered to all participants
via AZDC-ECF

12